UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHELE VOTEL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )    Civil Action No. 07-1216 (HHK) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Defendant. | ) |
| | ) |
| _____ | ) |

**RULE 16.3 REPORT**

Pursuant to this Court's November 21, 2007 Order, Local Civil Rule 16.3 and Federal Rule of Civil Procedure 26(f), the parties submit this Rule 16.3 Report. The parties conferred telephonically and have subsequently cooperated in good faith in jointly preparing this report.

    **1.**     **Likelihood This Case Will Be Disposed Of By Dispositive Motion**

Defendant believes all or part of this case will be resolved by dispositive motion regarding the issue of informed consent following the close of discovery. Plaintiff does not currently intend to file any dispositive motions.

    **2.**     **Date For Joining Other Parties**

The parties do not anticipate joining additional parties.

    **3.**     **Assignment To A Magistrate Judge**

Neither party consents to the assignment of this case to a Magistrate Judge for all purposes at this time, but would be willing to consider it following the close of discovery

### 4. Possibility Of Settlement

Although no settlement negotiations have occurred as of this point, both parties are open to exploring the possibility of settlement.

### 5. Alternative Dispute Resolution

Defendant believes that this case would benefit from the assignment of the case to a Magistrate Judge for settlement purposes following the informal exchange of information and following the close of formal discovery. Plaintiff concurs in assignment of a Magistrate Judge for purposes of exploring settlement.

### 6. Dispositive Motion Schedule

The parties jointly propose that dispositive motions should be due 45 days after the close of discovery, oppositions filed 30 days thereafter, and replies filed 20 days after oppositions.

### 7. Initial Disclosures

The parties jointly propose that initial disclosures should be made 14 days following an initial scheduling order from this Court.

### 8. Discovery

The parties jointly propose that discovery begin with the issuance of a scheduling order and end 270 days thereafter. The parties will follow the Federal Rules of Civil Procedure with respect to the number of depositions (10) and interrogatories (25). Additionally, the parties will follow the Federal Rules of Civil Procedure with respect to requests for the production of documents (no limitation), and requests for admissions (no limitation).

Electronically Stored Information:

A) All discovery requests for electronically stored information ("ESI") will be limited to production requests, not inspection requests.

B)      Requests for ESI will be limited to ESI created during the time period from one month prior to Plaintiff's employment to one month following her employment, i.e., July 9, 2004 to June 20, 2005.

C)      In accordance with Rule 26(b)(2)(B), parties will produce legally discoverable ESI requested that the producing party determines is reasonably accessible.  A party need not provide discovery of ESI from sources that the party identifies as not reasonably accessible because of undue burden or cost.  The responding party must also identify, by category or type, the sources containing potentially responsive information that it is neither searching nor producing.  The identification should, to the extent possible, provide enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information from the identified sources.

D)      Responses to requests for production of ESI in native file format need not include metadata or system data.

E)      The parties agree to enter into a stipulated protective order pursuant to Rule 26(c) with regard to any ESI that contains Privacy Act protected data, personal or private information about present or past employees, business-sensitive information about a party's business activities and operations, and third-party business sensitive or proprietary information to include confidential business information covered by 12 C.F.R. § 404.7.

F)      All ESI sought by any party is subject to the rules on discovery scope and limitations provided in Rule 26(b).

G)      In accordance with Rule 26(b)(5)(B), if information is produced in discovery that is subject to a claim of privilege by any party, the party making the claim must notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return the specified information and any copies it has and may not use or disclose the information.  Failure of a party to properly designate privileged, Privacy Act, private or personal information, privileged information or business confidential, business sensitive or business proprietary information when produced shall not be deemed to constitute a waiver of the protected nature of the document or information.  Both parties agree that no copies will be made of the inadvertently disclosed materials.

9.  **Expert Reports**

The parties jointly propose that Plaintiff make all 26(a)(2) disclosures 60 days prior to the close of discovery and Defendant shall make all 26(a)(2) disclosures 30 days prior to the close of discovery.  Experts may be deposed up to the close of discovery.

The parties have no objection to proceeding with the initial status conference with the Court.

10.  **Class Actions**

This topic is not applicable to this case.

11.  **Bifurcation Of Trial Or Discovery**

The parties do not believe that bifurcation is necessary in this action.

12.  **Pretrial Conference Schedule**

The parties jointly propose that the Court set a status conference following the conclusion of discovery and schedule a pretrial conference at that status conference.

13.  **Trial Date**

The parties agree that a pretrial conference should not be scheduled until the Court has decided all dispositive motions, and until after discovery is complete.  Both parties concur that the Court should set the Trial Date at the pretrial conference.

14.  **Other matters**

The parties have no objection to proceeding with the initial scheduling conference schedule with the Court on December 19, 2007, at 9:45 a.m., in Courtroom 27A.

**STATEMENT OF THE CASE**

**Plaintiff's Statement of the Case:**

Plaintiff Michele Votel seeks damages pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et. seq. for injuries arising out of alleged medical malpractice.  Mrs. Votel, the

wife of an acting duty soldier, underwent elective oral surgery at Walter Reed Army Medical Center on April 26, 2005 to correct an overbite. During the course of that surgery, she sustained significant lingual nerve injury which immediately manifested itself by intense pain, burning, and tongue numbness. On May 12, 2005, Mrs. Votel returned to surgery to remove and replace failed hardware. Subsequently, Mrs. Votel returned to Walter Reed on multiple occasions complaining of tongue pain and foul odor emanating from her mouth. She was prescribed medication and referred to the pain clinic at Bethesda Naval Medical Center. The patient was eventually examined by oral surgeons at BNMC who diagnosed bilateral lingual nerve injury. Surgery at BNMC was conducted on August 4, 2005 and identified discontinuity of the left lingual nerve. Attempts at repair were unsuccessful. Repair of the damaged right lingual nerve were abandoned because of infection.

On October 26, 2005, Mrs. Votel underwent surgery yet again during which the left lingual nerve was reconnected. The right lingual nerve, however, had been too damaged to repair.

Michele Votel continues to experience pain in her tongue and in her right jaw. Her tongue remains numb and her ability to taste is diminished.

Plaintiff alleges that government health care providers failed to secure her informed consent in accordance with applicable law prior to her surgery on April 26, 2005. She further alleges that her surgery on April 26, 2005 was negligently performed and that government health care providers failed to timely diagnose and appropriately treat her bilateral lingual nerve injury. As a direct and approximate result of the above-described negligence, Mrs. Votel has sustained damages for which she seeks compensation as set forth in her complaint

**Defendant's Statement of the Case:**

Plaintiff, Michele Votel, brings this case pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et. seq. alleging malpractice in connection with complications stemming from her elective oral surgery at Walter Reed Army Medical Center (WRAMC).  Plaintiff alleges the medical procedures were performed negligently, the post-procedure observation and treatment was substandard, and that the doctors failed to secure her informed consent.  Plaintiff's claims are without merit.  Ms. Votel provided informed consent for both of the surgeries performed at WRAMC.  When Plaintiff was first referred to the Oral and Maxillofacial Surgery Service in May 2004, Dr. Haddad discussed all of the risks and benefits of surgery with Plaintiff including the risk of permanent nerve damage, infection, and the need for follow-on surgery.  Dr. Haddad also had Plaintiff view the Informed Consent Video.  Nonetheless, Dr. Haddad refused to consider Plaintiff for surgery until she underwent further orthodontic treatment and Plaintiff agreed to quit smoking.  In February 2005, after Plaintiff returned to the Surgery Service, having quit smoking, all parties agreed that given Plaintiff's severe overbite, bilateral sagittal split osteotomy was the best viable treatment plan. Nonetheless, Dr, Haddad again discussed the risks and dangers of the proposed procedure and documented those discussions. Plaintiff also signed a consent form for her surgery.  Given this history Plaintiff fails to even make a prima facie case for an informed consent action.

Similarly, the treatment and care of Plaintiff was also appropriate and within the standard of care. The first surgery was performed on April 26, 2005 without complications.  The medical records reflect minimal pain or concern on Plaintiff's part.  Plaintiff's allegation that she immediately experienced pain and burning in her tongue is contrary to the medical records. While Plaintiff did allege mild numbness and tingling during her follow up appointment, because

6

their was no evidence of nerve trauma, it was well within the standard of care to monitor Plaintiff, and refer her for possible nerve exploration if their were no improvements within 3 months.

On March 9, 2005 Plaintiff presented at WRAMC with a new open bite resulting from a "pop" Plaintiff heard while she was eating. Following another detailed informed consent, Plaintiff had a second surgery to remove and replace the failed hardware, without complication. In the course of recovering from that second surgery Plaintiff developed an infection which caused her significant pain. In response to Plaintiff's increasing pain, WRAMC took appropriate action both in managing Plaintiff's escalating pain and in referring her to National Naval Medical Center (NNMC) for follow on treatment and care. Accordingly WRAMC performed all medical care and treatment within the standard of care.

Respectfully submitted,

_/s_____
RICHARD H. GASPERINI
Goodman, Allen & Filetti
4501 Highwoods Parkway
Glen Allen, VA 23060
Attorney for Plaintiff

_/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_/s_____
RUDOLPH CONTRERAS D.C. Bar # 434122
Assistant United States Attorney


_/s_____
BRIAN C. BALDRATE
Special Assistant U.S. Attorney
555 Fourth Street, N.W.,
Washington, D.C. 20530
(202) 353-9895
Attorneys for Defendant

7